## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| RORY JOSEPH, | : | CIVIL ACTION NO. |
| Petitioner, | : | 3:13-CV-00168 (JCH) |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | JUNE 14, 2016 |

## RULING RE: AMENDED MOTION FOR RELIEF UNDER 28 U.S.C. § 2255 (DOC. NO. 66)

Petitioner Rory Joseph ("Joseph") has moved to vacate his conviction, vacate his sentence, or for such other relief as is authorized under section 2255 of title 28 of the United States Code.  See Am. Mot. for Relief under 28 U.S.C. § 2255 ("Am. Mot. for Relief") (Doc. No. 66).  Joseph argues that his conviction and sentence should be vacated because he received ineffective assistance of counsel and because he is actually innocent.  See id.  He also alleges that he is entitled to relief because the court failed to ensure that Joseph understood the elements of the charged offense before he pled guilty and neglected to ensure that the elements of the charged offense were satisfied by the facts of Joseph's case.  See id. at 2.

The government responded to Joseph's claims in an Opposition filed on May 12, 2015.  See The United States' Mot. for Extension of Time to File Resp. to Am. 2255 Pet. ("Gov't's Opp.") (Doc. No. 75).[1]  Joseph filed a Reply to the government's response on July 8, 2015.  See Pet'r's Reply Mem. of Law in Supp. of Request for Summ. Relief

_____

[1] Despite its title, the government's "Motion for Extension of Time" (Doc. No. 75) contains its substantive response to Joseph's claims.

under § 2255 or, In the Alternative, for an Evidentiary Hr'g ("Pet'r's Reply") (Doc. No. 82).  The court held oral argument on Joseph's Petition on October 2, 2015.  <u>See</u> Minute Entry (Doc. No. 86).  Following oral argument, both Joseph and the government filed supplemental briefing on issues related to the pending Petition.  <u>See</u> Pet'r's Suppl. Mem. of Law (Doc. No. 89); the United States' Suppl. Mem. in Opp. to Am. Section 2255 Pet. ("Gov't's Suppl. Mem. in Opp.") (Doc. No. 92); Pet'r's Second Suppl. Mem. of Law (Doc. No. 93).  Joseph also filed a Declaration in support of his Petition.  <u>See</u> Decl. of Rory Joseph (Doc. No. 94).

The court subsequently determined that "the motion and the files and records of the case" did not show that Joseph "is entitled to no relief," 28 U.S.C. § 2255(b), and therefore scheduled an evidentiary hearing on Joseph's Petition.  The first evidentiary hearing was held on April 19, 2016.  <u>See</u> Minute Entry (Doc. No. 107).  At that hearing, Joseph attempted to introduce the testimony of an expert witness, to which the government objected on the ground that Joseph had not sufficiently disclosed the opinions of the proposed expert in advance of the hearing.  <u>See</u> Evidentiary Hr'g Tr. ("Tr.") at 91 (Doc. No. 111).  Although Rule 26 of the Federal Rules of Civil Procedure does not necessarily apply in proceedings related to a Petition filed pursuant to section 2255, <u>see</u> Fed. R. Governing Section 2255 Proceedings 12 (noting that "[t]he Federal Rules of Civil Procedure . . . <u>may</u> be applied to a proceeding under these rules" (emphasis added)), the court adjourned the evidentiary hearing to allow Joseph to make a formal disclosure of his proposed expert and to permit the government to obtain the services of its own expert, if it so chose.  <u>See</u> Tr. at 94 (Doc. No. 111).  The continued evidentiary hearing was held on May 18, 2016, <u>see</u> Minute Entry (Doc. No. 113), after

2

which the court took Joseph's Petition and the related filings under advisement.

For the reasons that follow, Joseph's Amended Motion for Relief (Doc. No. 66) is

**GRANTED**.

## I.   BACKGROUND

In November 2009, a federal grand jury returned an Indictment charging Joseph

with one count of possessing a firearm while subject to a restraining order that included

a finding that Joseph was a credible threat to the physical safety of the protected person

in violation of sections 922(g)(8) and 924(a)(2) of title 18 of the U.S. Code.  United

States v. Joseph, No. 3:09-cr-00252 (JCH), Indictment (Doc. No. 21).  On December

22, 2009, Joseph pled guilty to Count One of the Indictment.  See id., Minute Entry for

Proceedings Held before Judge Holly B. Fitzsimmons: Change of Plea Hr'g (Doc. No.

32); id., Plea Agreement (Doc. No. 36).

On June 24, 2010, the court sentenced Joseph to 120 months imprisonment

followed by three years of supervised release, as well as a $100 special assessment.

See id., Judgment (Doc. No. 69).  The court found a base level offense of 14, a four-

level enhancement for specific offense characteristics, and a two-level enhancement for

obstruction of justice.  See id., Sentencing Hr'g Tr. at 110 (Doc. No. 75).  The court

declined to subtract levels from Joseph's offense level for acceptance of responsibility,

as Joseph urged.  See id. at 110-11.  Thus, Joseph's total offense level was 20.  When

combined with Joseph's criminal history category of II, his offense level yielded a

Guidelines imprisonment range of 37-46 months.  See id.  However, the court departed

upward from the United States Sentencing Guidelines under section 5K2.3, based on

extreme psychological injury to the victim.  See id. at 179-86; see also Judgment at 1

(Doc. No. 69).  Joseph's sentence was also a variance sentence imposed after United States v. Booker, 543 U.S. 220 (2005), and after the court's consideration of the factors listed in section 3553(a) of title 18 of the U.S. Code.  See Judgment at 1 (Doc. No. 69).

Joseph appealed his sentence, contending that it should be vacated because the government breached the plea agreement and the court committed procedural and substantive errors in sentencing him.  The Second Circuit affirmed Joseph's sentence on February 16, 2012.  United States v. Joseph, 462 F. App'x 52 (2d Cir. 2012) (Summary Order).

On February 4, 2013, Joseph timely filed a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. No. 1).  Subsequently, and through counsel, Joseph filed an Amended Motion for Relief (Doc. No. 66).

## II.    FINDINGS OF FACT[2]

The lawyer who represented Rory Joseph in his criminal case ("defense counsel") was a solo practitioner who was appointed to represent Joseph pursuant to the Criminal Justice Act ("CJA").  See United States v. Joseph, No. 3:09-cr-00252 (JCH), Attorney Appearance (Doc. No. 10).  Joseph's defense counsel has handled approximately 15-20 cases as a CJA-appointed lawyer in his career, although he stopped accepting CJA appointments a few years ago.  See Tr. at 8 (Doc. No. 111). Joseph's case was the first case involving section 922(g)(8) that defense counsel had ever handled.  See id. at 50.

Defense counsel's involvement in Joseph's case began with his appearance at

---

[2] The court has sought to separate its findings of fact from its conclusions of law.  However, there may be occasions when findings of fact are intertwined with the legal analysis in the Discussion section. Additionally, the court notes that it finds only those facts necessary to resolve the pending Motion.

4

the initial presentment, at which point he met with Joseph for the first time.  See id. at 9.

Defense counsel also received a copy of the criminal Complaint and supporting Affidavit

at the presentment.  See id. at 9-10.  The criminal Complaint indicates that Joseph has

violated "Title 18, United States Code, Sections 922(g)(8)(B), 922(g)(9) and 924(a)(2)."

Criminal Compl. (Gov't's Ex. 1A) (Doc. No. 112).  Shortly after the presentment, defense

counsel received additional discovery materials from the government, including a sworn

statement Joseph gave to law enforcement officers after his arrest, see Rory Joseph

Statement (Gov't's Ex. 1B) (Doc. No. 112), a police report from the Branford Police

Department detailing Joseph's alleged domestic violence against the mother of his

child, see Protection/Restraining Order (Gov't's Ex. 1C) (Doc. No. 112), and a copy of

the Restraining Order to which Joseph was subject at the time of the events giving rise

to his criminal prosecution, see id.  Defense counsel reviewed this Restraining Order

and sections 922(g)(8) and 922(g)(9) of title 18 of the United States Code prior to

Joseph's detention hearing and concluded that there was "[d]efinitely" probable cause

for the charges against Joseph listed in the criminal Complaint.  Tr. at 14 (Doc. No.

111).

          After Joseph was detained, defense counsel scheduled two proffer sessions with

the government at Joseph's behest.  See id. at 14-15.  Both proffer sessions were

terminated by the government because the government believed Joseph was being

untruthful.  See id.  The government did not indict Joseph after the proffer sessions

because the Assistant United States Attorney assigned to Joseph's case, Christopher

Mattei ("Attorney Mattei"), was working with defense counsel on a possible plea

agreement.  See id. at 16-17.  On June 30, 2009, Attorney Mattei provided defense

counsel with discovery materials related to Joseph's case.  See Discovery Materials

from AUSA Mattei to Defense Counsel (Gov't Ex. 3) (Doc. No. 112).  That set of

materials also contained a copy of the state court Restraining Order to which Joseph

was subject at the time of his arrest in the federal criminal case at issue here.  See id.

On July 28, 2009, defense counsel sent Joseph a letter to which he attached a

proposed plea agreement prepared by Attorney Mattei.  See Letter from Defense

Counsel to Joseph re Plea Agreement (Gov't Ex. 4A) (Doc. No. 112).  The draft plea

agreement indicates that Joseph would be pleading guilty to having violated sections

922(g)(8)(B) and 924(a)(2) of title 18 of the United States Code.  See Plea Agreement

Draft July 2009 (Gov't Ex. 4B) (Doc. No. 112).  In the letter accompanying the

proposed plea agreement, defense counsel told Joseph that he "believe[d] [the plea

agreement] represents the best deal possible for [Joseph] in this case."  Letter from

Defense Counsel to Joseph re Plea Agreement (Gov't Ex. 4A) (Doc. No. 112).  At that

time, defense counsel continued to believe that the government could prove the

violations charged in the criminal Complaint and outlined in the plea agreement.  See

Tr. at 21-22 (Doc. No. 111).

In August 2009, defense counsel had a two-hour meeting with Joseph at Wyatt

Detention Facility.  See id. at 23.  Defense counsel reviewed the proposed plea

agreement with Joseph paragraph by paragraph before informing him that defense

counsel thought Joseph should seriously consider signing this plea agreement, because

defense counsel thought Joseph would be convicted if he chose to go to trial.  See id. at

23-24.  Joseph told defense counsel he wanted to think about it.  See id. at 24.

Several weeks after his meeting with Joseph, defense counsel received

6

additional discovery materials from the government.  See id.  These materials included

a copy of the transcript of the hearing that resulted in the issuance of the state court

Restraining Order against Joseph.  See id.; see also Email from AUSA Mattei (Gov't's

Ex. 5) (Doc. No. 112); Additional Discovery Material (Gov't's Ex. 6) (Doc. No. 112).

Defense counsel reviewed these materials upon receipt.  See Tr. at 25 (Doc. No. 111).

He also reviewed the section of the Connecticut General Statutes, section 46b-15,

pursuant to which the Restraining Order against Joseph was entered.  See id. at 27.

Defense counsel provided a copy of the transcript from the state court Restraining

Order hearing to Joseph.  See id. at 29-30; see also Copies of Transcripts in State

Court Proceedings (Gov't's Ex. 7) (Doc. No. 112).

Defense counsel received a revised plea agreement from Attorney Mattei in

September 2009.  See Tr. at 30 (Doc. No. 111); see also Revised Plea Agreement

(Gov't's Ex. 8A) (Doc. No. 112).  The revised plea agreement indicated that Joseph

would be pleading guilty to violating sections "922(g)(8) and 924(a)(2)" of title 18 of the

United States Code.  See Revised Plea Agreement (Gov't's Ex. 8A) (Doc. No. 112).  In

other words, the revised plea agreement changed the statutory citation for the first

violation with which Joseph was charged from section 922(g)(8)(B) to section 922(g)(8).

The revised plea agreement also recited the elements of section 922(g)(8), which

defense counsel continued to believe were satisfied by the facts of Joseph's case.  See

Tr. at 32 (Doc. No. 111).  In particular, defense counsel believed that the fact that a

state court Restraining Order had been issued against Joseph meant that the element

of section 922(g)(8)(C)(i), which requires that a person be subject to a court order that

"includes a finding that such person represents a credible threat to the physical safety of

such intimate partner or child," 18 U.S.C. § 922(g)(8)(C)(i), was met.  See Tr. at 32-33

(Doc. No. 111).  Defense counsel also believed the government could prove the

alternative element of section 922(g)(8)(C)(ii), which requires that the Restraining Order

"by its terms explicitly prohibit[ ] the use, attempted use, or threated use of physical

force" against the protected person.  See Tr. at 33 (Doc. No. 111).

Defense counsel provided a copy of the revised plea agreement to Joseph

shortly after he received it.  See id.  In a letter attached to the plea agreement, defense

counsel advised Joseph that "[e]ssentially, the agreement is the same" as prior

versions, and that "[t]he only changes are that the government wanted to put more

specific language in the agreement regarding the offense conduct."  See Letter to

Joseph from Defense Counsel (Gov't's Ex. 8B) (Doc. No. 112).  Defense counsel met

with Joseph again at the end of September, during which meeting defense counsel

again advised Joseph that he believed the elements of the violations the government

charged were satisfied and that, in defense counsel's opinion, going to trial would be

foolish.  See Tr. at 34 (Doc. No. 111).  Defense counsel also advised Joseph that he

risked losing a reduction in his offense level for acceptance of responsibility if he elected

to go to trial instead of signing the plea agreement.  See id. at 35.

After several months passed in which Joseph did not commit to pleading guilty by

signing the revised plea agreement, the government proceeded with an Indictment.

See Indictment (Gov't's Ex. 11) (Doc. No. 112).  A federal grand jury charged Joseph

with violating sections 922(g)(8) and 924(a)(2), but the specific language of the

Indictment tracks the elements of sections 922(g)(8)(A), (B), and (C)(i).  See id.; see

also Tr. at 40 (Doc. No. 111).  Defense counsel reviewed the Indictment with Joseph

8

prior to his arraignment, and again informed Joseph that he believed the government had enough evidence to convict Joseph of the violations charged. See Tr. at 41 (Doc. No. 111). Shortly after the arraignment, Joseph called defense counsel and informed him that he wanted to plead guilty. See id. at 42. Joseph pled guilty on December 22, 2009. See 12/22/09 Plea Agreement (Gov't's Ex. 12) (Doc. No. 112); see also United States v. Joseph, No. 3:09-cr-00252 (JCH), Plea Agreement (Doc. No. 36).

Although defense counsel repeatedly advised Joseph that the government could prove the violations with which Joseph was charged, defense counsel did not research the elements of a violation of section 922(g)(8) beyond reading the text of that statute and the text of the state restraining order statute, section 46b-15 of the Connecticut General Statutes. See Tr. at 46-47, 55-56, 82 (Doc. No. 111). It never occurred to defense counsel that the circumstances under which the state Restraining Order was entered against Joseph—namely with Joseph's complete agreement and without the issuing court making findings of fact—could give rise to an argument about whether the state Restraining Order was sufficient to satisfy the element of section 922(g)(8)(C)(i) of title 18 of the United States Code. See id. at 64. At no point during his review of the multiple plea agreements and Indictment did defense counsel look for and read cases about section 922(g)(8), let alone cases that address the question of whether the element of section 922(g)(8)(C)(i) could be satisfied by an implied finding; defense counsel simply assumed that the issuance of the state court Restraining Order against Joseph constituted an implied finding that Joseph was a threat to the mother of his child, and he further assumed that an implied finding was sufficient for purposes of section 922(g)(8)(C)(i). See id. at 64-75. Defense counsel's repeated advice to

9

Joseph—that he should take the plea agreement because the government had sufficient evidence to convict him—was predicated on these assumptions.  See id.

Because defense counsel made the aforementioned assumptions about the Restraining Order to which Joseph was subject satisfying the elements of a violation of section 922(g)(8), he never discussed the possibility that the element of section 922(g)(8)(C)(i) might not be met in Joseph's case—or even the possibility that an argument to that effect could be made—with Joseph.  Had defense counsel told Joseph that there was a possible defense based on an argument that the facts of Joseph's case didn't meet the element of section 922(g)(8)(C)(i), and that Joseph was therefore factually innocent of the crime for which he had been indicted, Joseph would not have pled guilty and would have proceeded to trial.  In other words, Joseph would have willingly risked the possibility of receiving a sentence longer than the one contemplated by the plea agreement if the argument about section 922(g)(8)(C)(i) had failed and he had been convicted after a trial in exchange for a chance, however slight, that he could be acquitted.  Joseph's willingness to take this risk would have been informed, in part, by the fact that he is not a U.S. citizen, which means that his conviction in this case exposes him to possible deportation upon completion of his sentence.

## III.   LEGAL STANDARDS

### A.   Section 2255 Petition

"Because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack."  Ciak v. United States, 59 F.3d 296, 301 (2d Cir.1995), abrogated on

other grounds by <u>Mickens v. Taylor</u>, 535 U.S. 162 (2002).  Furthermore, "the concern

with finality served by the limitation on collateral attack has special force with respect to

convictions based on guilty pleas."  <u>United States v. Timmreck</u>, 441 U.S. 780, 784

(1979).  "[C]ollateral attack on a final judgment in a criminal case is generally available

under [section] 2255 only for a constitutional error, a lack of jurisdiction in the

sentencing court, or an error of law or fact that constitutes a fundamental defect which

inherently results in complete miscarriage of justice."  <u>Graziano v. United States</u>, 83

F.3d 587, 589-90 (2d Cir. 1996) (internal quotations and citation omitted).

In a section 2255 motion, the burden is on the petitioner to prove, by a

preponderance of the evidence, that he is entitled to relief.  <u>See</u> <u>Napoli v. United States</u>,

45 F.3d 680, 683 (2d Cir. 1995).  In deciding a section 2255 motion, the court must hold

a hearing, "[u]nless the motion and the files and records of the case conclusively show

that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  However, a petitioner is

not automatically entitled to a hearing.  <u>See</u> <u>Gonzalez v. United States</u>, 722 F.3d 118,

130 (2d Cir. 2013).  "To warrant a hearing, the motion must set forth specific facts

supported by competent evidence, raising detailed and controverted issues of fact that,

if proved at a hearing, would entitle [the petitioner] to relief."  <u>Id.</u> at 131.  The threshold

evaluation in determining the necessity for a hearing is whether the petitioner's claim is

"plausible," not whether that claim "will necessarily succeed."  <u>Puglisi v. United States</u>,

586 F.3d 209, 213 (2d Cir. 2009) (internal citations and quotation marks omitted).

B.     <u>Ineffective Assistance of Counsel</u>

Ineffective assistance of counsel is "[o]ne claim that may appropriately be raised

for the first time in a [section] 2255 motion, 'whether or not the petitioner could have

raised the claim on direct appeal.'" Harrington v. United States, 689 F.3d 124, 129 (2d Cir. 2012) (quoting Massaro v. United States, 538 U.S. 500, 504, 509 (2003)).  A petitioner claiming ineffective assistance of counsel "must show that (1) counsel's performance was objectively deficient, and (2) petitioner was actually prejudiced as a result."  Id. (citing Strickland v. Washington, 466 U.S. 668, 687-88, 692-93 (1984)).  This two-part test applies both to cases in which the petitioner was convicted after trial and to cases in which the petitioner pled guilty.  See Hill v. Lockhart, 474 U.S. 52, 58 (1985) ("We hold, therefore, that the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel.").

The burden of showing ineffective assistance is "a heavy one because, at the first step of analysis, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Harrington, 689 F.3d at 129 (internal quotations and citation omitted).  "The determinative question at this step is not whether counsel 'deviated from best practices or most common custom,' but whether his 'representation amounted to incompetence under prevailing professional norms.'"  Id. at 129-30 (quoting Harrington v. Richter, 562 U.S. 86, 105 (2011)).  The standard for evaluating the adequacy of counsel's representation is "a most deferential one," Harrington, 562 U.S. at 105, because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," United States v. Thomas, 608 F. App'x 36, 38 (2d Cir. 2015) (Summary Order) (quoting Strickland, 466 U.S. at 690).

To show the requisite prejudice at the second step, a petitioner must show "a reasonable probability that his reliance on counsel's ineffective assistance affected the

outcome of the proceedings." Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In the context of guilty pleas, the specific inquiry is "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59. "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id.

## IV.   DISCUSSION

Although Joseph raises multiple grounds for relief in his Amended Motion, the bulk of Joseph's claims[3] depend on the resolution of one question:  was it reasonable for defense counsel to assume that the issuance of a state court Restraining Order against Joseph constituted an implied finding that Joseph was a threat to the protected party, and further to assume that an implied finding of this kind was sufficient to meet the element of section 922(g)(8)(C)(i)?  For the sake of clarity and precision, the court will approach this question in two parts.  First, the court will analyze section 922(g)(8) with an eye to assessing, from an objective perspective, whether an implied finding is sufficient to meet the element of section 922(g)(8)(C)(i).  The court will use the conclusions drawn from this analysis to inform the discussion of the second, and more important, question, i.e., whether it was professionally reasonable for defense counsel

---

[3] Joseph has also alleged that relief pursuant to section 2255 is warranted because defense counsel was ineffective in "fail[ing] to investigate or call material witnesses to the sentencing proceeding." Am. Mot. for Relief at 2 (Doc. No. 66).  The question of whether the actions of Joseph's counsel with respect to the sentencing proceeding constituted ineffective assistance is distinct from the other grounds for relief raised in Joseph's Amended Motion, and the court will address this argument separately.  See infra part IV.B.1.

to answer this question as he did in 2009.  Because the court concludes that defense counsel's actions were objectively unreasonable, the court must then turn to an assessment of whether Joseph was prejudiced by defense counsel's ineffective assistance.  For the reasons that follow, the court ultimately concludes that Joseph was prejudiced and thus is entitled to the relief he seeks.

A.    Sufficiency of the State Court Restraining Order

Joseph was indicted for a violation of section 922(g)(8) of title 18 of the United States Code, which bars firearm possession by anyone "who is subject to a court order that":

> (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
>
> (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
>
> (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
>
> (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury . . . .

18 U.S.C. §§ 922(g)(8)(A)-(C).  Subsections (A), (B), and (C) of section 922(g)(8) are conjunctive, meaning they must all be satisfied for an individual to be guilty of unlawful possession of a firearm while subject to a restraining order.  See United States v. Sanchez, 639 F.3d 1201, 1204 (9th Cir. 2011).  However, sections (C)(i) and (C)(ii) are disjunctive, meaning that the satisfaction of either clause is sufficient for prosecution under section 922(g)(8).

The Indictment in Joseph's case generally stated that his actions were "in violation of Title 18, United States Code §§ 922(g)(8) and 924(a)(2)," see Indictment at 1 (Gov't Ex. 11) (Doc. No. 112), but the text of the Indictment specifically alleges that Joseph possessed a firearm while he was "subject to a court order issued . . . after a hearing of which he received actual notice, and at which he had an opportunity to participate, restraining him from harassing, stalking, or threatening an intimate partner, that included a finding that the defendant was a credible threat to the physical safety" of the mother of his child, see id. In other words, the grand jury specifically found that Joseph had violated section 922(g)(8) because his actions satisfied the elements of subsections (A), (B), and (C)(i). See id. Notably, the Indictment did not allege that the alternative basis of liability provided by section 922(g)(8)(C)(ii) was satisfied by Joseph's actions. See id.

The Indictment's failure to charge that Joseph's actions satisfied the alternative element of section 922(g)(8)(C)(ii) is important, because "an indictment must set forth each element of the crime that it charges." United States v. Resendiz-Ponce, 549 U.S. 102, 107 (2007) (internal quotations, alterations, and citation omitted). Furthermore, "[a] defendant is deprived of his right to be tried only on the charges returned by a grand jury if the prosecution's proof or theory constitute a modification at trial of an essential element of the offense charged." United States v. Weiss, 752 F.2d 777, 787 (2d Cir. 1985). In Joseph's case, the "essential elements" of the crime charged in his Indictment were provided by subsections (A), (B), and (C)(i) of section 922(g)(8). Thus, any attempt to prove Joseph's guilt by establishing that his actions satisfied the alternative element of subsection (C)(ii) of section 922(g)(8) would have constituted an

15

impermissible amendment of Joseph's Indictment.[4]  See Stirone v. United States, 361

U.S. 212, 216 (1960) (stating that charges in an indictment "may not be broadened

through amendment except by the grand jury itself"); United States v. Roshko, 969 F.2d

1, 5 (2d Cir. 1992) (noting that "an indictment is constructively amended where the proof

adduced at trial broadens the basis of conviction beyond that charged in the

indictment") (internal quotations and citation omitted); see also Weiss, 752 F.2d at 787

("An amendment of the indictment occurs when the charging terms of the indictment are

altered, either literally or in effect, while a variance occurs when the charging terms of

the indictment are left unaltered, but the evidence offered at trial proves facts materially

different from those alleged in the indictment." (internal quotations, alterations, and

citation omitted)).

Joseph does not contest that the elements of 922(g)(8)(A) and (B) were met in

his case, and instead focuses on the contention that it was not possible that the

essential element of section 922(g)(8)(C)(i) was satisfied.  In particular, Joseph argues

---

[4] Joseph's plea agreement recited both the elements of subsection (C)(i) and (C)(ii) as alternative bases for liability under section 922(g)(8), see United States v. Joseph, No. 3:09-cr-00252 (JCH), Plea Agreement at 1-2 (Doc. No. 36) ("The defendant understands that to be guilty of the offense charged in Count One, the following essential elements must be satisfied . . . That [the state court restraining order] included a finding that the defendant represented a credible threat to the physical safety of such intimate partner or child; or by its terms explicitly prohibited the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury . . . ."), although the Stipulation of Offense Conduct appended to Joseph's plea agreement only alleged conduct that would satisfy the element of (C)(i), see id. at 10.  Similarly, at Joseph's Change of Plea Hearing, the government recited both (C)(i) and (C)(ii) as alternative elements that could support a conviction under section 922(g)(8), see Plea Hr'g Tr. at 18, 33 (Doc. No. 77), but when asked what evidence the government would adduce to establish Joseph's guilt under section 922(g)(8), the government only recited facts related to section 922(g)(8)(C)(i), see id. at 35-36.
    In sum, although the government recited the alternative elements of (C)(i) and (C)(ii) in the plea agreement and again at the Change of Plea Hearing, it is not clear that this recitation was actually an impermissible attempt to amend Joseph's Indictment, because the specific facts offered by the government in support of Joseph's plea relate exclusively to the satisfaction of section 922(g)(8)(C)(i), which is the element set forth in the Indictment.  For purposes of this Ruling, therefore, the court assumes that Joseph's plea was based on the fact that his conduct purportedly violated section 922(g)(8) because the elements of subsections (A), (B), and (C)(i) were satisfied by the facts in his case.

that the state court Restraining Order that formed the basis for his prosecution under section 922(g)(8) contained "no 'findings' at all, much less a finding of a credible threat to anyone's physical safety."  Pet'r's Initial Mem. of Law in Support of Request for Summ. Relief under §2255, or, in the Alternative, for an Evidentiary Hr'g ("Pet'r's Initial Mem. of Law") at 17 (Doc. No. 67).  In response, the government argues that, although the state court Restraining Order may not have contained an explicit finding of the kind described in section 922(g)(8)(C)(i), the fact that the state Restraining Order issued involved an implied and necessary finding that Joseph represented a credible threat to the physical safety of the mother of his child.  Gov't's Opp. at 29 (Doc. No. 75).  For the reasons that follow, the court agrees with Joseph.

The state court Restraining Order entered against Joseph in 2009 was issued pursuant to section 46b-15 of the General Statutes of Connecticut ("C.G.S.A.").  At that time,[5] section 46b-15(a) provided that, "[a]ny family or household member . . . who has been subjected to a continuous threat of present physical pain or physical injury . . . may make an application to the Superior Court for relief under this section."  The next section, 46b-15(b), provided that such an application "shall be accompanied by an affidavit made under oath which includes a brief statement of the conditions from which relief is sought," and states that, when considering such an application, "[t]he court, in its discretion, may make such orders as it deems appropriate for the protection of the applicant and such dependent children or other persons as the court sees fit."  Although the statute requires the court to order a hearing once it is in receipt of an application for relief under section 46b-15, nothing in the statute requires the court to hold a contested

---

[5] Section 46b-15 has since been amended and expanded.

evidentiary hearing or to make explicit findings of fact prior to entering orders pursuant to the statute.  See id.  The Connecticut Supreme Court has also never held that the issuance of protective orders pursuant to section 46b-15 requires the issuing court to hold a formal evidentiary hearing or to make findings of fact on the record.[6]

Although the language of section 46b-15 does not require an issuing court to make formal findings related to the issuance of a Restraining Order, it is certainly within the power of the issuing court to make relevant findings prior to the entry of such an Order.  However, no such findings were made in Joseph's case.  Neither the text of the Restraining Order itself nor the state court's statements on the record at the hearing can plausibly be read to contain a finding that Joseph posed a credible threat to the physical safety of the mother of his child.  See Restraining Order After Hr'g (Doc. No. 67-5); Restraining Order Hr'g Tr. (Doc. No. 67-3).  Thus, for the court to conclude that the Restraining Order entered against Joseph contained a finding that Joseph was a credible threat to the physical safety of the mother of his child as required by section 922(g)(8)(C)(i), the court would have to agree with the government that the entry of the Restraining Order necessarily means that the issuing court made an implied finding that Joseph's behavior constituted "a continuous threat of present physical pain or physical injury" to his victim.  C.G.S.A. § 46b-15(a).  However, after careful consideration of the

---

[6] The Connecticut Supreme Court has stated that a protective order pursuant to section 46b-15 "will not issue in the absence of the showing of a threat of violence, specifically a 'continuous threat of present physical pain or physical injury' to the applicant." Putnam v. Kennedy, 279 Conn. 162, 171 (2006) (citation omitted).  However, a showing is not the same thing as a finding.  A showing relates to what the applicant must allege and could be satisfied by the affidavit that is required by the statute.  See C.G.S.A. § 46b-15(b) (noting that "[t]he application shall be accompanied by an affidavit made under oath").  In contrast, a finding is a determination made by a factfinder.  As noted above, Connecticut law does not appear to require that the issuing court make formal findings prior to the entry of an order pursuant to section 46b-15.  At most, it requires only that the court find that such a showing has been made.

plain language definition of "finding," the structure of section 922(g)(8), and precedents

from other Circuits, the court is persuaded that a "finding"—for purposes of section

922(g)(8)(C)(i)—must be explicit.

Black's Law Dictionary defines a "finding of fact" as "[a] determination by a judge,

jury, or administrative agency of a fact supported by the evidence in the record."

Finding of Fact, Black's Law Dictionary (10th ed. 2014).[7]  The key term within that

definition—"determination"—is itself defined as "[t]he act of deciding something officially;

[especially] a final decision by a court or administrative agency."  Determination, Black's

Law Dictionary (10th ed. 2014).[8]  These definitions suggest that the plain language

meaning of "finding" in the legal context generally refers to something that is stated and

explicit, as opposed to something that is implied and unstated.

In addition to following logically from the plain meaning of the term "finding,"

concluding that the "finding" required to satisfy the element of section 922(g)(8)(C)(i)

needs to be explicit is also consistent with the nature of the statute itself.  The

requirement that a section 922(g)(8)(C)(i) finding be explicit allows a court overseeing a

prosecution pursuant to section 922(g)(8) to make sure that the essential elements of

that crime are satisfied by the facts of a given case.  As Joseph notes, "not every

restraining order or protective order will support a prosecution under [section]

922(g)(8)."  Pet'r's Initial Mem. of Law at 15 (Doc. No. 67).  The plain text of the statute

makes clear that, for the essential element of section 922(g)(8)(C)(i) to be met, the state

---

[7] This definition is exactly the same in the Ninth Edition of Black's Law Dictionary, published in 2009.  Finding of Fact, Black's Law Dictionary (9th ed. 2009).

[8] In the 2009 version of Black's Law Dictionary, "determination" is similarly defined as "[a] final decision by a court or administrative agency."  Determination, Black's Law Dictionary (9th ed. 2009).

court Restraining Order must contain a finding "that [the defendant] represents a credible threat to the physical safety" of the person who holds the Restraining Order.  18 U.S.C. § 922(g)(8)(C)(i) (emphasis added).  If the state court finding that satisfies section 922(g)(8)(C)(i) need not be explicit, it becomes challenging for the court overseeing a section 922(g)(8) prosecution to ensure that the relevant finding was both that the threat posed by the defendant was credible, and that the threat was to the physical safety of the protected person.  Because section 922(g)(8)(C)(i) is an essential element of a crime, the uncertainty introduced by allowing the finding for purposes of section 922(g)(8)(C)(i) to be implicit is a problem with potentially constitutional dimensions.[9]

Finally, requiring that the finding for purposes of section 922(g)(8)(C)(i) be explicit is consistent with the decisions of other courts that have considered this question. Although the Second Circuit has not addressed this issue, the Fourth, Fifth, Ninth, and Eleventh Circuits have, although often in dicta.  Of those, the Fifth, Ninth, and Eleventh Circuits have stated that satisfaction of the element of section 922(g)(8)(C)(i) requires an explicit finding in the state court Restraining Order.  See Sanchez, 639 F.3d at 1206 ("If an individual's threat could be presumed from the terms of the order, then there would be no need for (8)(C)(i), which is satisfied only by an express finding that an individual represents a credible threat."); United States v. DuBose, 598 F.3d 726, 730 (11th Cir. 2010) (noting that the restraining order in that case "does not make any

---

[9] It is perhaps because of this problem that the Criminal Resource Manual for United States Attorneys notes that, for purposes of prosecution pursuant to section 922(g)(8)(C)(i), the state court restraining order "must include a specific finding that the defendant represents a credible threat to the physical safety of the victim."  U.S. Attorneys' Manual, Criminal Resource Manual at 1116 (Doc. No. 82-1) (emphasis added).

finding that DuBose represents a credible threat to the physical safety of his wife or her daughters, as required by section 922(g)(8)(C)(i)" and that, as a result, "in order for DuBose's conviction under 922(g)(8) to be valid, the [restraining] order must comply with 922(g)(8)(C)(ii)"); United States v. Emerson, 270 F.3d 203, 213-14 (5th Cir. 2001) (noting that criminal liability pursuant to section 922(g)(8) can be established if either (C)(i) or (C)(ii) are proven, and stating that (C)(i) requires "an express judicial finding of future dangerousness").[10]  Only the Fourth Circuit has suggested that an implied finding might be sufficient for purposes of section 922(g)(8)(C)(i), on grounds that are similar to the government's argument in its briefing related to this Motion.  See United States v. Mahin, 668 F.3d 119, 126 (4th Cir. 2012).  For the reasons outlined at length above, the court finds the view of the section 922(g)(8)(C)(i) requirement expressed by the Fifth, Ninth, and Eleventh Circuits to be more persuasive.

Having concluded that satisfaction of the element of section 922(g)(8)(C)(i) requires the state court that issued a Restraining Order to have made an explicit finding that the defendant is a credible threat to the physical safety of the protected party, and having further determined that there was no such finding in Joseph's case, the court will now turn to the question of whether the fact that an essential element of the crime with which Joseph was charged was not, and could not have been, established entitles Joseph to relief under section 2255.

B.    Joseph's Entitlement to Relief under Section 2255

Joseph alleges that he is entitled to relief under section 2255 both because

---

[10] Although most of the cases discussed in this paragraph were decided after 2009, it is worth noting that Emerson was decided long before 2009.  See Emerson, 270 F.3d 203 (decided Oct. 16, 2001).

defense counsel provided ineffective assistance of counsel and because the court failed to ensure that Joseph's plea was knowing and voluntary and that the elements of the charged offense were met prior to the entry of Joseph's plea.  See Am. Mot. for Relief at 1-2 (Doc. No. 66).  Joseph also argues that, because the essential element of section 922(g)(8)(C)(i) could not have been met by the facts of his case, he is actually innocent of the crime to which he pled guilty.  See id. at 1.  Because the court concludes that Joseph is entitled to relief on the grounds that defense counsel provided ineffective assistance, the court need not reach Joseph's other arguments.

Joseph alleges defense counsel was ineffective in two separate ways:  (1) that defense counsel's representation was deficient because he failed to complete adequate research, failed to identify the possible issue with whether the facts of Joseph's case satisfied the element of section 922(g)(8)(C)(i), and therefore advised Joseph to plead guilty without telling Joseph he had a viable defense; and (2) that defense counsel was ineffective when he failed to investigate and call material witnesses at Joseph's sentencing hearing.  Am. Mot. for Relief at 1-2 (Doc. No. 66).  The court will consider each of these arguments, but will take up the second argument first.

1.    Defense Counsel's Failure to Call Witnesses at Sentencing

Joseph's argument that defense counsel provided constitutionally deficient assistance when he failed to call various witnesses who would purportedly have rebutted the testimony offered by a government witness at Joseph's sentencing does not entitle Joseph to relief under section 2255.  "The decision not to call a particular witness is typically a question of trial strategy that . . . courts are ill-suited to second-guess."  United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998); see also United

States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997) ("[T]he tactical decision of whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation.").  Only rarely will courts in this Circuit "disturb such 'strategic' decisions" as whether to call witnesses, and generally only under circumstances indicating the lawyer's decision was "not the sort of conscious, reasonably informed decision made by an attorney with an eye to benefitting his client."  Pavel v. Hollins, 261 F.3d 210, 217-18 (2d Cir. 2001).  That is not the situation here.

At Joseph's original sentencing hearing on June 1, 2010, defense counsel asked for, and was granted, time to investigate and prepare witnesses who Joseph indicated would provide testimony that could rebut the testimony of government witness Cornelius Taylor.  See United States v. Joseph, No. 3:09-cr-00252 (JCH), Hr'g Tr. at 7, 10-11, 13, 17 (Doc. No. 82).  In an Affidavit submitted in connection with the pending Motion, defense counsel attests that he spoke to the witnesses identified by Joseph and determined that "each of these individuals was susceptible to impeachment and likely would not make a good witness."  Defense Counsel Aff. at 3 (Doc. No. 78-3).  Defense counsel determined that a better course of action would be "submitting the letters from these individuals but focusing upon a cross-examination of Taylor to undermine Taylor's credibility" instead of relying on "the testimony of these reluctant and easily impeachable witnesses."  Id.

At Joseph's sentencing hearing on June 24, 2010, defense counsel did in fact introduce letters from the witnesses identified by Joseph, which were admitted by the court.  Sentencing Hr'g Tr. at 47-48 (letter from Justin Green); 50-51 (letter from

Maurice Joyner); 52-53 (letter from Aaron Vaughan); 55 (letter from Willie Sanders) (Doc. No. 75).  Defense counsel's offering of the letters was part of his extensive cross-examination of Cornelius Taylor, which covered Taylor's relationship with Joseph, Taylor's criminal history, potential bias resulting from Taylor agreeing to testify against Joseph in the hopes of getting a lesser sentence for himself, possible inconsistencies in Taylor's story, and the presentation of evidence (the letters referenced above) that contradicted Taylor's testimony.  Id. at 24-65.  In sum, the record indicates that defense counsel investigated the witnesses identified by Joseph but ultimately decided to forgo having those witnesses testify directly, opting instead for a vigorous cross-examination of the government's witness.

This conscious, informed, strategic decision did not render defense counsel's performance objectively deficient.  Cf. Pavel, 261 F.3d at 217-18, 225-26 (finding the performance of an attorney who failed to call witnesses objectively deficient where the attorney's reason for not calling witnesses was that he believed a motion to dismiss would be granted).  Additionally, there is no evidence that Joseph was actually prejudiced as a result of defense counsel's failure to call these witnesses.  Thus, Joseph has not carried his burden under either prong of Strickland for showing ineffective assistance of counsel and is not entitled to relief on this claim.

        2.      Defense Counsel's Failure to Investigate the Sufficiency of the State Court Restraining Order

Although the court concludes that defense counsel provided effective assistance in connection with Joseph's sentencing proceedings, the court reaches a different conclusion with respect to the effectiveness of defense counsel's representation during plea negotiations.  As discussed at length above, see supra part IV.A, the essential

elements of the crime for which Joseph was indicted were provided by subsections (A), (B), and (C)(i) of section 922(g)(8). However, the Restraining Order that provided the basis of Joseph's prosecution under that statute did not contain a "finding that [Joseph] represents a credible threat to the physical safety of" the mother of his child, and the issuing court also failed to make such a finding on the record at the hearing, which means that the essential element of (C)(i) was not met by the facts of Joseph's case. Nonetheless, the court is cognizant of the fact that the ultimate question before the court is not whether the essential element of (C)(i) was satisfied by the facts of Joseph's case, but rather whether defense counsel's actions related to his investigation of Joseph's case and his advice to Joseph that he should plead guilty because he did not have a viable defense were reasonable when defense counsel undertook them in 2009. Under Strickland, an attorney's failure to satisfy the objective standard of reasonableness means that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Although the court is well aware that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," id. at 690, the court concludes that defense counsel's actions were not professionally reasonable.

The Supreme Court has recognized that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691. In the context of a criminal case, one of the most basic duties attendant on the defense attorney is to familiarize himself with the elements of the crime with which his client is charged, and to make sure the government will be able to prove

each of those elements.  Indeed, the Second Circuit recently noted that "defense counsel's failure to research the elements of [a crime with which a particular defendant was charged] undoubtedly constitutes deficient performance."  Jackson v. Conway, 763 F.3d 115, 155 (2d Cir. 2014) (emphasis added).  Thus, defense counsel had a clear duty to familiarize himself with criminal liability pursuant to section 922(g)(8), and to investigate whether the facts of Joseph's case satisfied the elements of subsections (A), (B), and (C)(i).

Assuming defense counsel completed a "thorough investigation of [the] law and facts relevant to" Joseph's case, any subsequent strategic choices made by defense counsel would be "virtually unchallengeable."  Strickland, 466 U.S. at 690.  In other words, if defense counsel noticed that the state court Restraining Order to which Joseph was subject did not contain an explicit finding that Joseph was a credible threat to the physical safety of the mother of his child (and that the issuing court did not make such a finding on the record at the hearing) but, following an adequate investigation, decided that the word "finding" in the context of section 922(g)(8)(C)(i) could include an implied finding, the court might not conclude that defense counsel's actions were constitutionally deficient.  However, defense counsel did not conduct an adequate investigation.  In fact, defense counsel conducted no research at all beyond reading the plain texts of the relevant federal and state statutes.[11]  Defense counsel's failure

_____

[11] In his testimony at the first evidentiary hearing related to the pending Petition, defense counsel was remarkably—and admirably—consistent on this point.  See Tr. (Doc. No. 111).  At the second evidentiary hearing, counsel for the government advised the court that defense counsel has been consistent in his admission that he conducted no research beyond the plain texts of the relevant statutes since his very first conversations with the government on this matter.  Based on its observations at the hearings, the court finds defense counsel to be forthcoming and credible, and therefore credits his testimony that he conducted no research (and in particular, no caselaw research) on the question of whether the elements of section 922(g)(8) were satisfied by the facts of Joseph's case.

thoroughly to investigate the law relevant to Joseph's case and, in particular, the fact that he failed to research the elements of a violation under section 922(g)(8), makes his performance as Joseph's lawyer objectively deficient.  See Strickland, 466 U.S. at 691; Jackson, 763 F.3d at 155 (stating that "defense counsel's failure to research the elements of first-degree sodomy under New York law undoubtedly constitutes deficient performance"); Greiner v. Wells, 417 F.3d 305, 325 (2d Cir. 2005) (noting that "where a habeas petitioner establishes that counsel's choices were not the result of a conscious, reasonably informed decision made by an attorney with an eye to benefitting his client, courts may question such choices" (internal quotations and citation omitted)); see also Kimmelman v. Morrison, 477 U.S. 365, 386-87 (1986) (finding ineffective assistance of counsel where counsel failed to conduct pretrial investigation); DeLuca v. Lord, 77 F.3d 578, 587 (2d Cir. 1996) (finding counsel ineffective in case where counsel abandoned a crucial and available defense "prematurely, for inadequate reasons, and without ever giving it serious consideration").

Several additional facts buttress the court's conclusion that defense counsel's failure to research the elements of section 922(g)(8) constituted constitutionally ineffective assistance of counsel.[12]  First, Joseph's case was the first case involving section 922(g)(8) that defense counsel had ever handled.  In other words, this case

---

[12] The court notes that some of the points raised in the following paragraphs were articulated by criminal defense expert Sarah Russell ("Attorney Russell") at the second evidentiary hearing held in this case.  The court found Attorney Russell's testimony to be both helpful and credible.  However, given the legal nature of Attorney Russell's testimony, many of the conclusions she reached are ones the court is capable of reaching, and does reach, on the basis of the court's independent research and analysis.  Thus, the court credits and relies on Attorney Russell's testimony regarding the standard of care for a reasonable defense attorney working in Connecticut in 2009, but the court does not rely on any part of Attorney Russell's testimony that arguably concerns the legal conclusions reserved for the court in this case, e.g., whether Joseph's defense counsel was, in fact, ineffective.

27

does not present a situation in which defense counsel was representing a person accused of a crime with which defense counsel had extensive experience, such as a federal drug crime.  Because defense counsel had no experience with section 922(g)(8) on which to draw, his failure to conduct basic research on the elements of section 922(g)(8) is even less understandable.

Second, there were red flags throughout the charging and plea documents given to defense counsel by the government that should have prompted him to conduct further investigation into the elements of the specific crimes with which Joseph was charged.  Most notably, both the criminal Complaint and the first plea agreement charged Joseph with violating section 922(g)(8)(B),[13] which is only one of the three essential elements of a section 922(g)(8) violation and is not a standalone basis for criminal liability.  See Criminal Compl. (Gov't's Ex. 1A) (Doc. No. 112); Plea Agreement Draft July 2009 (Gov't's Ex. 4B) (Doc. No. 112).  Despite this strange defect, defense counsel—without conducting further investigation or discussing the matter with Joseph—advised Joseph to take the plea, telling him that the plea "represents the best deal possible for you in this case."  Letter from Defense Counsel to Joseph re Plea Agreement (Gov't's Ex. 4A) (Doc. No. 112).

Third, defense counsel's failure to conduct even basic caselaw research means that his representation does not meet the standards set by the American Bar Association for criminal defense attorneys in effect in 2009, which provide that "[a]fter

---

[13] Between the criminal Complaint and the first plea agreement, the government also dropped one of the initial charges—that Joseph had violated section 922(g)(9)—apparently without explanation. See Criminal Compl. (Gov't's Ex. 1A) (Doc. No. 112) (charging a violation of section 922(g)(9)); Plea Agreement Draft July 2009 (Gov't's Ex. 4B) (Doc. No. 112) (omitting section 922(g)(9) charge); Tr. at 59 (Doc. No. 111) (testimony by defense counsel that he never discussed whether the government could prove a violation of section 922(g)(9) with Attorney Mattei).

informing himself or herself fully on the facts and the law, defense counsel should advise the accused with complete candor concerning all aspects of the case."  ABA Standards for Defense Function 4-5.1(a) (3d ed. 1993) (emphasis added).  As the Supreme Court has long recognized, "prevailing norms of practice as reflected in American Bar Association standards and the like are guides to determining what is reasonable."  Padilla v. Kentucky, 559 U.S. 356, 366 (2010) (internal quotations, alterations, and citations omitted); see also Strickland, 466 U.S. at 688 ("Prevailing norms of practice as reflected in American Bar Association standards . . . are guides to determining what is reasonable, but they are only guides.").  Furthermore, Attorney Russell testified that a reasonably competent defense attorney working in Connecticut in 2009 would have adhered to this standard, which testimony the court credits and accepts.  Thus, defense counsel's failure to conduct his representation in accordance with the ABA's standards, in particular by failing to "inform[ ] himself . . . fully on . . . the law" related to Joseph's case, ABA Standards for Defense Function 4-5.1(a) (3d ed. 1993), provides further support for the conclusion that his representation was constitutionally deficient.

Finally, if in 2009 defense counsel had conducted a "thorough investigation of law and facts relevant to plausible options," Strickland, 466 U.S. at 690, he could have uncovered caselaw that suggested that a finding for purposes of section 922(g)(8)(C)(i) must be specifically set forth in the state Restraining Order.  At the Circuit level,[14] the

---

[14] There are also several district court decisions issued pre-2009 that could clue an attorney into the possibility that a finding for purposes of satisfying section 922(g)(8)(C)(i) must be explicit, including at least one in the Second Circuit.  See United States v. Erwin, No. 1:07-CR-556 (LEK), 2008 WL 4534058 at *2 (N.D.N.Y. Oct. 6, 2008) (noting that for purposes of section 922(g)(8)(C)(i), "the court order must make a specific finding of 'a credible threat to the physical safety' of an intimate partner or child" (emphasis added)).

most notable pre-2009 cases are from the Fifth Circuit.  For example, in Emerson,

which was decided in 2001, the Fifth Circuit characterized subsection (C)(i) as requiring

"an express judicial finding of future dangerousness."  270 F.3d at 214.  Building on that

decision a year later, in United States v. Spruill, the Fifth Circuit explained that possible

Second Amendment concerns regarding section 922(g)(8) "were not controlling" in

situations where "the state law and procedures were such that the [restraining] order

should not issue unless the issuing court actually concluded that absent the order there

was a realistic threat of imminent physical injury to the protected party."  United States

v. Spruill, 292 F.3d 207, 217 (5th Cir. 2002) (emphasis added).  Importantly, in Spruill

the Fifth Circuit quoted at length from a Second Circuit case in which the court noted

that, "[w]ith a true 'consent judgment' all of the relief to be provided by the judgment and

all of the wording to effectuate that relief is agreed to by the parties.  The court makes

no determination of the merits of the controversy or of the relief to be awarded."  Id.

(quoting Janus Films, Inc. v. Miller, 801 F.2d 578, 582 (2d Cir. 1986)).  Had defense

counsel read these cases, he could have realized that there was a possible argument to

be made with respect to the sufficiency of the government's evidence related to section

922(g)(8)(C)(i), because (1) Joseph consented to the Restraining Order that was

entered against him, meaning that arguably the judge had made "no determination of

the merits of the controversy," Janus Films, Inc., 801 F.2d at 582, i.e., no explicit

findings related to the threat Joseph posed to the protected party, and (2) implied

findings are arguably not sufficient for purposes of section 922(g)(8)(C)(i), see, e.g.,

Emerson, 270 F.3d at 214.  Because defense counsel did not conduct caselaw

research, however, he did not find these cases, and he therefore missed this possible

defense.  More importantly, defense counsel's failure to uncover this possible defense meant that he repeatedly, and erroneously, advised Joseph that there were no defenses available to him, that the government could easily prove the elements of a section 922(g)(8) violation at trial, and that Joseph should take the plea agreement offered by the government.

For all of the foregoing reasons, the court concludes that Joseph has proven, by a preponderance of the evidence, that defense counsel's actions were objectively unreasonable and his representation constitutionally deficient.  Joseph has therefore carried his burden with respect to Strickland's first prong.

The second prong of the Strickland test requires a petitioner seeking relief pursuant to section 2255 to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.  In the context of a guilty plea, the petitioner must specifically show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59.

The court concludes that Joseph has also met his burden of establishing that he was prejudiced by defense counsel's ineffective assistance.  At the second evidentiary hearing in this case, Joseph testified at length about his memory of defense counsel's representation and advice, as well as the choices he would have made if defense counsel had advised him that there was a possible defense related to the fact that the element of section 922(g)(8)(C)(i) was arguably not met by the facts of his case.  See

Exhibit-Witness List at 2 (Doc. No. 112) (noting that Rory Joseph testified on 5/18/16). Joseph's testimony was generally consistent both with defense counsel's testimony about what transpired in the months leading up to Joseph's decision to plead guilty in 2009 and with Joseph's prior Declaration submitted in conjunction with this Petition. See Decl. of Rory Joseph (Doc. No. 94).  Based on its observations at the hearing, the court found Joseph's testimony on the issues related to this case to be credible, and therefore credits Joseph's repeated assertion that he would have rejected the plea and proceeded to trial if defense counsel had advised him there was any possibility of a viable defense.  Furthermore, the court concludes that it would have been rational for Joseph to reject the government's plea offer under the circumstances.  See Padilla, 559 U.S. at 372 ("Moreover, to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").

    As a defense strategy, rejecting the plea offer and proceeding to empanel a jury so as to attach jeopardy to the charge against Joseph before raising the problems with the Indictment would not have been without risk.  Joseph and defense counsel could not have been certain that the court would agree that a finding for purposes of section 922(g)(8)(C)(i) must be explicit.[15]  Furthermore, there is a possibility that the government would have noticed the defect in the Indictment and sought to remedy it before jeopardy attached.  Weighing against the significance of these risks, however, is

_____

[15] Notwithstanding the fact that Joseph and defense counsel could not have known in advance whether this defense would be successful, the court reiterates the conclusion set forth in part IV.A of this Ruling that this defense would, in fact, have been successful.  Thus, Joseph has met his burden of establishing the portion of Strickland's prejudice inquiry that depends "on whether the affirmative defense likely would have succeeded at trial."  Kovacs v. United States, 744 F.3d 44, 53 (2d Cir. 2014) (quoting Hill, 474 U.S. at 59).

the fact that the plea agreement was not particularly beneficial to Joseph.  The government did not dismiss any charges against Joseph in exchange for his plea; the Indictment against Joseph only contained one Count.  See Indictment (Gov't's Ex. 11) (Doc. No. 112).  As a result, the primary benefits to Joseph from pleading guilty were (1) avoiding trial, and (2) getting the government's commitment to recommend to the court that Joseph receive a three-point reduction in his Guidelines calculation for acceptance of responsibility.  See Plea Agreement at 3 (Doc. No. 78-2).  These benefits are not insignificant, but they are also not particularly compelling when weighed against the real possibility that Joseph could be deported after completing his sentence if he chose to plead guilty.  Under these circumstances, it would not have been irrational for Joseph to conclude that he would be better served by rejecting the plea offer and proceeding to trial in the hopes that he could get the charge against him dismissed because the government could not prove the essential element of section 922(g)(8)(C)(i), knowing that, if convicted, he risked a longer sentence.  In this regard, the court notes that the government has conceded that, had Joseph pursued this strategy and it played out as he contends it would have, the Double Jeopardy Clause would have barred the government from reindicting him with the alternative element of section 922(g)(8)(C)(ii). See Gov't's Suppl. Mem. in Opp. at 3 (Doc. No. 92).

In sum, the risks that Joseph would have run by rejecting the plea agreement stand in counterpoint to the possible advantage Joseph could have gained if pursuing this strategy had resulted in him wholly avoiding criminal liability pursuant to section 922(g)(8) for the actions that led to his Indictment.  A reasonable person facing this calculus could decide that the best course of action would be to proceed to trial in the

hopes that the government would be unable to prove the element of section 922(g)(8)(C)(i). Because the court credits Joseph's testimony that he would not have pled guilty if he had understood the potential insufficiency of the state court Restraining Order for purposes of a prosecution under section 922(g)(8), and because the court concludes that a rational person facing these circumstances might decide not to plead guilty, there is a "reasonable probability" that, but for defense counsel's ineffective assistance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Joseph has carried his burden of establishing both prongs of the Strickland test, and he is therefore entitled to relief pursuant to section 2255 of title 28 of the United States Code. Because the court concludes that Joseph is entitled to relief on the grounds that his counsel during plea negotiations provided ineffective assistance, the court will not reach the alternative grounds for relief raised by Joseph's Motion. See Am. Mot. for Relief at 1-2 (Doc. No. 66).

C.    Relief

When a person who pled guilty to a crime establishes that he is entitled to relief under section 2255 of title 28 of the United States Code, the appropriate remedy is "an opportunity to withdraw the plea and proceed to trial." Padilla, 559 U.S. at 372-73. Therefore, Joseph is entitled to withdraw his guilty plea, at which point his conviction and sentence would be vacated and his criminal case would revert to pretrial status. Joseph shall notify the court within **seven (7) days** of the date of this Ruling whether he intends to withdraw his plea of guilty.[16]

---

[16] The court notes that the parties have, at various points in the proceedings related to this

**V.     CONCLUSION**

For the foregoing reasons, the court **GRANTS** Joseph's Amended Motion for

Relief under 28 U.S.C. § 2255 (Doc. No. 66).  Joseph's original Petition for Relief under

28 U.S.C. § 2255 (Doc. No. 1) is **TERMINATED AS MOOT**.

**SO ORDERED.**

Dated this 14th day of June, 2016, at New Haven, Connecticut.


 /s/ Janet C. Hall_____
Janet C. Hall
United States District Judge

---

Petition, addressed issues such as whether either the Double Jeopardy Clause or the statute of
limitations would bar reindictment of Joseph pursuant to section 922(g)(8)(C)(ii).  See Pet'r's Suppl. Mem.
of Law at 10-12 (Doc. No. 89); Gov't's Suppl. Mem. in Opp. at 5-11 (Doc. No. 92).  However, resolution of
these questions is not necessary to the court's Ruling on Joseph's pending Petition, and the court
therefore declines to address these issues at this time.  In the event proceedings subsequent to this
Ruling result in the government attempting to reindict Joseph, the applicability of the Double Jeopardy
Clause and the running of the statute of limitations would be addressed at that time upon proper motion.